Marvin D. Tucker and Marian E. Tucker v. Commissioner.
Tucker v. Commissioner
Docket No. 62212.
United States Tax Court
T.C. Memo 1957-118; 1957 Tax Ct. Memo LEXIS 136; 16 T.C.M. (CCH) 488; T.C.M. (RIA) 57118; June 28, 1957
*136 Held: On the evidence presented, petitioners did not furnish more than one-half the support of James R. Friedeman entitling them to dependency credits in the years before the Court. Milton Suffian, Esq., 722 Chestnut Street, St. Louis, Mo., for the petitioners. William A. Goffe, Esq., for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies in income taxes of Marvin D. Tucker and Marian E. Tucker in the calendar years and amounts as follows: Year
Deficiency
1951
$133.16
1952
153.69
1953
147.60
1954
132.02
The Commissioner seeks $30 increased deficiency for 1953 by amended answer, in which it is alleged there was an error in adding taxes withheld at source which resulted in overstatement of the amount to be refunded. The amount shown on the return was refunded. This item is not contested. The sole issue before us is whether petitioners furnished more than one-half of the support for James R. Friedeman during the taxable years in issue entitling them to a dependency credit in 1951, 1952 and 1953 under section 25(b)(1)(D), Internal Revenue Code of 1939, and a like *137 credit in 1954 under sections 151(e)(1) and 152(a) of the Internal Revenue Code of 1954. Since the above sections are substantially the same under both Codes, no distinctions need be made for the years in issue. Findings of Fact Some of the facts are stipulated and are found accordingly. The petitioners are husband and wife, residing in Lemay, Missouri. During most of the taxable years in issue, petitioners resided in St. Louis, Missouri. Their joint returns were timely filed with the then collector of internal revenue for 1951, and with the district director of internal revenue for 1952, 1953 and 1954, for the St. Louis district of Missouri. Petitioner Marian E. Tucker, hereinafter sometimes referred to as Marian, and James J. Friedeman, hereinafter referred to as Friedeman, were husband and wife prior to September 1948, when they were divorced. To this union was born in February 1947, the dependent in question, James R. Friedeman, hereinafter referred to as James. The divorce decree provided that Marian would have custody of their son, James, and also provided that Friedeman would furnish $12.50 per week toward the support of James. Some time prior *138 to 1950, Marian and co-petitioner Marvin D. Tucker, hereinafter some times referred to as Tucker, were married. During the years 1951, 1952, 1953 and 1954, James lived with petitioners as a member of the household. Also living with them was Lynn E. Tucker, a daughter of petitioners born in August 1950. Both children were claimed as dependency exemptions on the joint income tax returns of petitioners for each of the years in issue. Friedeman also claimed James as a dependency exemption for each of these years on his income tax returns. During 1951 through 1954, Tucker was employed as a salesman and a sales manager. He also was employed, on a part-time basis, as a musician, performing about 50 jobs a year. During this period Marian also worked part-time as a singer. The combined total wages of petitioners for the four years involved averaged approximately $8,500 per year. Petitioners purchased a home in St. Louis in 1950 at a cost of $7,725. The reasonable rental value thereof was $75 per month. They lived in this home until November of 1954 when they moved into a home costing $16,500, in Lemay, Missouri. This home had a reasonable rental value of $125 per month. Friedeman had custody *139 of James one day a week and during the summer months James spent additional time with his father. During these visits Friedeman expended money for food and entertainment. In each of the years 1951 and 1952, approximately $90 was expended, and in each of the years 1953 and 1954 approximately $115 was expended. Amounts of $35 and $25 were spent by Friedeman in the purchase of clothing for James in 1951 and 1954, respectively. The sums above are in addition to the amount of $650 per year which Friedeman paid for the benefit of James by order of the divorce decree. We find that Friedeman furnished for the support of James the following sums: 1951
1952
1953
1954 $775 $740 $765 $790
Petitioners did not furnish more than onehalf of the support for James R. Friedeman. Opinion It was incumbent upon petitioners to prove the total amount attributable to the support of James, and that they expended from their own funds amounts in excess of those from other sources. Bennett H. Darmer, 20 T.C. 822. We think they have failed to sustain that burden. The evidence presented by petitioners in attempting to prove the total amount directly contributed, *140 or indirectly allocable, to the support of James was stipulated in part. We will first consider the amounts so stipulated. Certain amounts were stipulated by the parties to have been spent directly for James' support. These amounts include sums spent directly for James each year for doctor bills, schooling, clothing, haircuts, etc. Other amounts expended for household needs, such as food, dry cleaning, department store accounts, contributions, drugs, etc., were stipulated as to total amounts each year but the allocation of these amounts among household members was left to us. When we make the allocation of one-fourth of such total amounts as being spent for James, and add thereto the stipulated amounts spent directly for James, the total would run from $550 to $900 a year. This does not include the expense of lodging. There are two methods for computing the cost of lodging when the taxpayer owns his own home. Where there is a finding of reasonable rental value then that value, properly allocated, can be taken as the total expense to the taxpayer furnishing lodging to the dependent. William C. Haynes, 23 T.C. 1046, and Emil Blarek, 23 T.C. 1037. Where there *141 is no evidence as to reasonable rental value, the actual out-of-pocket expense for providing lodging is employed. See Lena Hahn, 22 T.C. 212. By this is meant allocable portions of property taxes, mortgage interest, insurance, utilities, ordinary repairs and other expenses of like nature. The stipulation also includes total amounts for expenditures of this nature. It was also stipulated that certain sums were expended for furniture and appliances for the home and certain sums would be attributable to depreciation of all of the furniture and appliances. Petitioners contend that one-fourth of the depreciation amounts should be allocated as loding expense items. Respondent contends such depreciation item would not be proper lodging expense items. We need not decide this issue for if the lodging expense is figured on the out-of-pocket method and the allocation is made for depreciation of furniture and appliances in the home it would still be less than one-fourth of the reasonable rental value of the home. The evidence of taxpayers was that the reasonable rental value of the home for all except the last month of the period involved was $75 a month. This, when allocated equally *142 amongst each household member would result in $225 a year as cost of lodging. From the above it is apparent that all stipulated sums spent for James for support, including lodging, would be approximately $775 to $1,150 a year, and this is giving the taxpayers the benefit of generous allocations. Of these amounts, we have found that Friedeman furnished an average of $770 per year. It should be stated that the stipulated sums for many of the items of expense, such as dry cleaning, clothing and contributions, were not intended to be taken as agreed totals. And there were other items not included in the stipulation which would be proper expense items such as baby sitter expense and entertainment. Petitioners introduced some evidence concerning these items. This evidence was, for the most part, vague generalizations and estimates based upon the unsupported opinion and memory of the petitioners. Certain of their estimates, such as baby sitter expense, dry cleaning, entertainment, etc., seem inflated to us. Even if we were to believe petitioners' estimates concerning such items as dry cleaning, it is obvious that the total amount should not be allocated evenly among each member of the *143 household. James was four years of age in 1951. Surely petitioners could not seriously argue that dry cleaning expense for a four year old child would equal that of an adult who was both a salesman and a night club entertainer, or for a housewife, also a night club entertainer. The most we could add to the yearly expense by reason of the evidence would not be more than an average of $100 to $150 a year. This leaves petitioners short of proving they furnished more than one-half the support of James R. Friedeman during the years involved. Decision will be entered for the respondent.